## APPEAL OF EDWIN SCHLOSSBERG.

Docket No. 2006. Submitted May 14, 1925. Decided September 30, 1925.

> 1. Taxpayer is not entitled to additional deductions from gross income on account of ordinary and necessary expenses.
>
> 2. Distributive share of capital contribution returned on dissolution and liquidation of a partnership is not taxable income.
>
> 3. Losses on stock sales not deductible from gross taxable income unless transactions are *bona fide*.

*James L. Dohr, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

This appeal is from the determination by the Commissioner of a deficiency in income taxes for the calendar years 1918, 1919, 1920, and 1921, in the aggregate amount of $5,558.96, all of which is in controversy. The issues involved are: (1) Disallowance of certain expenditures as proper deductions from gross income; (2) adjustment of income derived from the liquidation of a partnership; and (3) disallowance of losses sustained as a result of sales of shares of stock. From the oral and documentary evidence, and the allegations of the petition admitted by the Commissioner, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is an individual residing in New York. During the years 1918 to 1921, inclusive, he was a member of the partnership of E. Schlossberg & Co., of Roanoke, Va.; during the years 1919 and 1920, he was a member of the partnership of Max Rubenstein & Co., of New York; and since January 1, 1921, he has been the sole owner of E. Schlossberg & Co., of New York, where he is engaged in business as a resident buyer of millinery and ladies' ready-to-wear goods.

2. Both prior to and since the year 1918, the taxpayer has had financial interests in a number of retail stores dealing in millinery and ladies' ready-to-wear goods in Virginia, in addition to his own store conducted under the name of E. Schlossberg & Co., at Roanoke, Va. All these related concerns are operated by brothers, brothers-in-law, and other relatives who are also stockholders. Early in the year 1918, the taxpayer went to New York for the purpose of engaging in the business of a resident buyer of millinery and ladies' ready-to-wear merchandise and entered the firm of Max Rubenstein & Co. as a partner.

3. The taxpayer's original partnership agreement with Max Rubenstein & Co. provided that he should receive a salary of $250 per month, 20 per cent of the profits, and an allowance for expenses.

The sole source of income and profits was commissions paid by wholesale dealers in millinery and ladies' ready-to-wear goods. At the end of the first five months he received $1,000 as his 20 per cent interest in the profits for that period. A new partnership agreement, in writing, was then entered into for the year beginning July 1, 1918, and ending July 1, 1919, by the terms of which the taxpayer was to receive a salary of $350 per month and 40 per cent of the profits. Under the second partnership agreement he invested $2,000 in cash and 40 per cent of the cost of necessary furniture and fixtures, in an amount not disclosed by the record, as capital contribution to the partnership. At the termination of this period a third partnership agreement was entered into for the term beginning July 1, 1919, and ending December 28, 1920. This agreement provided that the taxpayer should receive a salary of $500 per month until January 1, 1920, and of $600 per month for the remainder of the partnership term and also 50 per cent of the profits. At the termination of this third agreement, the taxpayer withdrew from the partnership of Max Rubenstein & Co., and engaged in the same business on his own account under the firm name of E. Schlossberg & Co.

4. On his withdrawal from the partnership of Rubenstein & Co., on December 28, 1920, the taxpayer received $4,229.94 in cash for his 50 per cent interest on the realized profits of the firm as of that date, and subsequently included such amount in his gross income in his income-tax return for the calendar year 1920. At the same time he also received a further amount of $3,100 in uncollected accounts due Rubenstein & Co., but assigned to him, from which he realized an equal amount in cash some time during the year 1921, and furniture and office equipment valued at $1,400. These two items, aggregating $4,500, were less than the taxpayer's contribution of capital to the partnership, which amounted to $4,850.

5. From time to time, while he was a member of the partnership of Rubenstein & Co., the taxpayer expended various amounts for traveling expenses for himself and for his customers and for the entertainment of buyers who were in New York for the purpose of purchasing millinery and ladies' ready-to-wear goods. Some parts of such amounts were spent for theater parties, dinners, taxicab fares, hotel bills, and other articles and services, the nature of which is not disclosed by the record. To provide funds for the entertainment of buyers, the taxpayer drew checks on his personal bank account. The only record of the expenditures made for the entertainment of buyers was kept as a rough memorandum in a pocket diary or account book, which showed, in part only, the amounts so used and the names of the persons or firms for which such outlays were made. The itemized expenses so accounted for were repaid to the taxpayer by Rubenstein

& Co. The taxpayer now claims a deduction from his gross income for the years 1918, 1919, and 1920, of additional amounts expended by him for the traveling expenses and entertainment of buyers, which he did not charge to and collect from the partnership, because such payments were made for the purpose of developing the business in which he became engaged for himself after January 1, 1921.

6. The additional amounts claimed for traveling expenses and entertainment of buyers and for which canceled checks were submitted in evidence are as follows:

| Year | Expenses claimed | Canceled checks |
|---|---|---|
| 1918 | $1,000.00 | None. |
| 1919 | 3,500.00 | $3,552.67 |
| 1920 | 4,500.00 | 5,430.00 |
| 1921 | 5,847.50 | 5,747.50 |

The taxpayer usually carried from $50 to $100 in cash, to be used for the entertainment of buyers. When it became necessary to replenish his funds he would draw another check. The majority of the checks so drawn were for $100, but occasionally one was made for $200, $400, or other varying amounts. Nothing on the checks indicated the purposes for which they were drawn or what portion, if any, of the cash so obtained was used for personal expenses or traveling expenses, or how much, if any, of the funds so drawn and paid out was repaid to the taxpayer by Rubenstein & Co. Some of the taxpayer's personal expenses were paid from the proceeds of the checks in evidence. About twice each year he made a business trip to Virginia and the Carolinas, and for the expenses of such journeys he drew checks for larger amounts than was his custom while at work in New York. A substantial portion of the expenditures in question was for the entertainment and traveling expenses of buyers, who were relatives of the taxpayer, visiting New York as representatives of the various concerns in Virginia in which he was financially interested. The largest of such concerns and his largest customer was Kahn's, Inc., which had 16 buyers, with whom he had an understanding that he would pay part of their expenses in New York as a consideration for their business. The taxpayer was closely connected with this company by his relationship with its officers and stockholders and by his own stockholdings therein, as hereinafter set forth.

7. Kahn's, Inc., was originally organized and owned by the taxpayer, who sold it to two of his brothers some time during the year 1918. At that time it owned and operated two department stores in Virginia. During the years involved in this appeal, M. J. Schlossberg was president, M. Schlossberg was secretary-treasurer,

and the taxpayer, Edwin Schlossberg, was the New York representative of Kahn's, Inc. This corporation expanded until it owned and operated six department stores, located at Norfolk, Richmond, Petersburg, and Roanoke, in Virginia, and Parkersburg and Bluefield in West Virginia. It was prosperous in 1919 but later, in 1920 and 1921, all the stores, except the two at Roanoke and Bluefield, failed, with resulting heavy losses to the stockholders.

8. On February 1, 1920, the taxpayer purchased 250 shares of the common stock of Kahn's, Inc., for a cash payment of $110 per share, or a total of $27,500. On November 19, 1920, he transferred the shares so acquired to his wife for a consideration of $75 per share, or a total of $18,750, and received therefor a promissory note signed by his wife. No payments on account of the interest or principal of such note were ever made, and subsequently it was canceled. On January 2, 1921, the taxpayer purchased an additional 100 shares of the common stock of Kahn's, Inc., for which he paid $10,000 in cash. Later in the same year he transferred such shares to his wife for $5,000 and received therefor a promissory note, signed by his wife, on which no payments on account of either interest or principal were ever made, and that subsequently was canceled.

## DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be made on consent or on 15 days' notice, under Rule 50.

## OPINION.

LANSDON : This appeal involves three issues : (1) The deductibility from the taxpayer's gross income for the years in question of certain amounts alleged to have been paid by him as ordinary and necessary expenses incurred in the operation of his business; (2) the disposition of the assets and profits of the partnership of Max Rubenstein & Co. upon the withdrawal of the taxpayer therefrom; and (3) the deductibility from his gross income for the years 1920 and 1921 of losses alleged to have been sustained by the taxpayer in the sale of certain shares of stock of Kahn's, Inc., to his wife.

The evidence adduced by the taxpayer in support of his first contention is conflicting and unconvincing. Numerous canceled checks, payable to cash, were submitted in evidence, but the Board is unable to determine therefrom just what portions of the payments so evidenced were made for necessary business expenses. The taxpayer admits that some of the amounts represented by such checks were used for his personal expenses and that he was partially reimbursed by the partnership of Rubenstein & Co. for the cost of entertaining

buyers in New York. The totals of such reimbursements were not proved at the hearing. The record also discloses that the major portion of the amounts claimed as deductions on account of necessary expenses was used for the payment of traveling expenses and the entertainment in New York of relatives of the taxpayer who were buyers for the stores in which he was financially interested. On account of the character of his business it may have been necessary for the taxpayer to spend reasonable amounts for the expenses and entertainment of buyers, but apparently he has been reimbursed for all payments that he could account for with supporting vouchers. We see no reason for disturbing the determination of the Commissioner in respect to deductions claimed for business expenses.

The contention of the taxpayer with respect to the disposition of the profits and assets of Max Rubenstein & Co., at the date of his withdrawal therefrom, is well established by the evidence. When he withdrew from the partnership on December 28, 1920, the taxpayer received a cash payment of $4,229.94, concerning which there is no controversy. That was the amount of his interest in the undivided profits of the partnership on the date of his retirement therefrom, and was included in his gross income in his income-tax return for 1920. At the same time he also received uncollected accounts due Max Rubenstein & Co., in the amount of $3,100, which he realized in full in cash some time during the following year, and furniture and fixtures valued at $1,400. The taxpayer contends that the sum of these two amounts, $4,500, was not income from the profits of the partnership, but was in fact a return to him of his capital contribution. The last partnership agreement is not in evidence, but the prior agreements submitted at the hearing indicate that the taxpayer contributed $2,000 in cash and assumed the cost of 40 per cent of the furniture and fixtures used in the business, which sums were increased by the amounts testified to by the taxpayer as conditions of the last agreement. We are of the opinion that the taxpayer contributed $4,850 to the capital of Rubenstein & Co., and that the $4,500 represented by uncollected accounts and furniture and fixtures received by him on his withdrawal from such partnership was a return, in part, of the capital which he had contributed thereto, and that such amount should not be included in the taxpayer's gross income for either 1920 or 1921.

The taxpayer's final contention is that he should be allowed to deduct losses of $13,500, sustained by him in sales of certain stocks to his wife, from his gross income for the years 1920 and 1921. The facts in connection with these transactions are fully set forth in our findings above. The first purchase of such stock was made after it was known that the business of Kahn's, Inc., was no longer profit-

able. The second purchase at $100 a share was made less than two months after the taxpayer alleges that he had sold the shares first acquired for $75 a share. We are of the opinion that these alleged sales of stock lack all the elements of a *bona fide* transaction and that no losses affecting the tax liability of the taxpayer resulted therefrom. See *Appeal of P. B. Fouke*, 2 B. T. A. 219.

ARUNDELL not participating.